Chief Justice Robertson
delivered the Opinion of the Court.
Robert George, who owned a large estate, and was moreover entitled, as one of the officers of Clark’s Virginia Regiment in the revolutionary war, to half pay for life, published his last will, in April, 1803, whereby he devised various tracts of land to different persons, and? after directing his executors to pay all his debts, made the following provision for James Noble Wood:—
“It is my desire that James Noble Wood shall have “ all that parcel or tract of land that I claim in Number “ 17, in the county aforesaid (Clark, in Indiana,) and “ also second choice of one hundred, in lot No. 169, in “ the aforesaid county, and further, all my claim of town “ lots in the town of Clarksville, and all my .stock and “ movable property, except what is hereinafter mentioned;” and the only subsequent bequest to which the exception could be applied, is one to Nancy Smith, of a horse, some household furniture and maintenance out of the profits of the land in Number 17, devised to J. N. Wood.
It does riot appear to the Court when the testator died. But the will was admitted to record in 1836, in the court of probate for Clark county, Indiana, and shortly afterwards, Henry Harrod, who was appointed administrator with the will annexed, received from the General Government, a gross sum of money exceeding ten thousand dollars, to which the testator was entitled in virtue of an act of Congress of 1832, for the benefit of certain officers of the Virginia line, to whom half pay for life had been promised by an act of the Virginia Legislature of 1779.
Margaret Wood — the surviving wife of the devisee, *344 James Noble Wood, and also the administratrix of his goods and chattels — claiming, under Robert George’s will, the money which had been collected from the government by Henry Harrod, brought this suit in chancery to coerce the payment of it to herself, in her fiducial right. But the Chancellor, being of the opinion that the claim to half pay did not pass to her husband by the bequest of all the testator’s “stock and movable property,” sustained a demurrer to her bill, and dismissed it absolutely.
The only question now to be revised, is 'whether J. N. Wood, as legatee under the will of Robert George^ was entitled to the money claimed by the bill. And we concur with the Chancellor in the opinion that he was not so entitled.
As the bill contains no suggestion which could affect the interpretation, the will must be construed on its face alone.
By his “stock,” the testator seems, from the context and tenor of the entire testament, to have intended nothing more than his live stock; and by his “movable property,” we presume that he contemplated that only which, either in itself or as the representative of value, was, in fact, tangible, visible, and movable. According to the common law, this would evidently be the true and only allowable interpretation of the isolated words, “movable property;” for the common law considers that species of property movable, and that only, which can move or be moved, and which, therefore, must be substantive. And the fact that the language of the legacy is “stock and movable property,” rather fortifies the common law interpretation of the single words movable property; because it may be considered probable that, when he added to “stock,” all his movable property, the testator meant by the latter, such property as was ejusdem generis, that is movable and tangible like stock.
But the civil law, it is true, divides all property into “movable and immovable (mobilia et immobilia,”) and considers every kind of property as movable which is not, either actually, potentially or legally, immovable.
And it is equally true that, in construing bequests, or *345 testamentary dispositions of personalty, the principles of the civil law have great influence, and generally prevail.
But mobilia or movables or “movable properly,” not having been adopted or recognized by either the courts of England or of this country, as technical terms, are not admitted, there or here, to have a technical import; and cannot therefore mean, per se, more than they importpn common use and according to the popular understanding. Consequently, when standing alone or unqualified, “movable property,” in a will, as elsewhere, should, in this* country, be interpreted as meaning property which may move or be moved (moventia vel mobilia,) and neither more nor less.
And therefore, as the great object in construing a will, is to ascertain the testator’s intention, and as “movable property” here has no arbitrary technical import, and is not, as we are bound to presume, used generally among us by common men in the comprehensive and artificial sense given to the same phraseology by the civil law, the bequest we are considering should not be understood as including even a debt which, not being evidenced by a writing which might be moved, had not, in fact or in judgment of law, the quality of mobility.
Money is corporeal, and therefore may have locality, and be moved from place to place; and bonds, though possessing (as has been said,) no locality, because they only represent value, and are choses in action, are, nevertheless, movable, and may pass by a bequest of movable goods or property. But a debt, merely as such, is altogether a chose in action, and cannot be made either local or movable in fact or in law.
The foregoing view, rational and plain, as we think it must be, seems to be fortified by authority.
Justice Doderidge, in his Touchstone, published by Shepherd,lays down the following as well established doctrines in the Courts of England: — “If one devise to J. S. all “ his movables, by this devise doth pass all his personal “ goods, both quick and dead, which either move them- “ selves, as horses, sheep, and the like, or may be mov- “ ed by another, as plate, household stuff, corn in the “ granaries and barns, or in the sheaf &c,, also, all bonds *346 u an¿ specialties; and by a devise of immovables, do “ pass, leases, rents, grass, and the like; but not any of M ^ose things that do pass by the devise of movables. “ But debts will not pass by other of these devises." Touchstone, 447.
In Swinburne on Wills, the same doctrines are recognized and illustrated — p. 504, part VII, sec. X.
And in Mann vs. Mann's Ex'r., 1 Johnson's Chy. Rep., 238, Chancellor Kent says — “ cash will pass by a be- “ quest of movables, but the better opinion is, according « to Godolphin, that money at interest will not so pass.” Thus Doderidge, Swinburne, Godolphin and Kent, seem to concur in the general conclusions which, without any authority, this Court would be inclined to adopt; and we have seen no countervailing authority, unless something of such a character might be inferred from a general, and rather obiter suggestion, made by Lord Cowper, in an anonymous case reported in 1 Pr. Wms. 267, in which — .after deciding that a bequest of all the "testator’s “goods” included, according to the common law, all his 'bonds — the Chancellor unnecessarily added the following supplemental remarks: — “but this being in the “ case of a will, and a will relating to a personal estate “ too, it ought to be construed according to the rules of “ the civil law. Now the civil law makes bona mobilia, •“ and bona immobilia, the membra dividentia of all estates, “ bona immobilia are land, bona mobilia are all movables, ‘‘ which must extend to bonds; and therefore, by the “ devise of all the testator’s goods, a bond must pass.”
Here the Lord Chancellor judicially decided only that, according to both the common and the civil law, “goods” included bonds — according to the common law, because goods may embrace all personal property, and a bond, is personal, (Ford's case, 12 Coke's Rep. 1;) and according also to the civil law, because that code considers every thing except land bona mobilia.
But this latter reasoning is inapplicable and inconclusive; for bona or goods, being the nomen generalissamum, all the testator’s “goods,” without any qualifying adjunct, would, according to the civil law, embrace his whole estate, immovable as well as movable; and therefore, *347 would include, not only bonds, but land, and also all choses in action. So much of the argument, however, as we have quoted, if it prove any thing, shows that, though the principles of the civil law generally prevail in the interpretation of bequests, nevertheless, technical used in such a testamentary disposition in England of-property there, should be understood according either to • the common law, or popular import of them; for there can be no doubt that “goods” in such a will, in England or in this country, would not pass land or immobilia as bona would, according to the civil law.
But this branch of Lord Cowper’s opinion is- authoritative so far, and only so far, as it tends- to show that a bond is movable property, and will therefore pass by a bequest of all movables or of all goods — each of which terms, being, as they should be, understood according to their ordinary or common law import,, could comprehend all personal properly which may move or be moved.
It therefore seems to us that the testator’s • claim to half pay for life, did not pass to J. N. Wood by the bequest of all his “movable property” — especially as there is no suggestion that there was any certificate or other document of title which could, in-itself, as evidence of the demand, be deemed movable property — unless some other intention should be-inferred from the whole context of the will than any which the words “movable property,” in themselves and alone, import, either in fact or in law.
And we are of the opinion, not only that there is nothing in the will, or in any just inference from its tenor, which can change the literal import of the words, “movable property,” but also, that there is something in it which- fortifies that construction of the bequest to J. N. Wood.
Had the testator evinced by his will a disposition to dispose of all his property of every kind, we should be inclined to think that, by “movable property,” he meant every thing personal; because the bequest to J. N. Wood, of all the testator’s “movable property,” would, in that *348 event, have been the only one which could have included personal estate which was not tangible and movable.”
But his will manifests no such comprehensive intention. It does not purport to dispose of his whole estate. Nor does the bill even suggest what estate he had.
Or had the bequest to Nancy Smith, of property which the testator expressly excepted from the legacy to J. N. Wood of the “movable property,’” contained articles of personalty which were not, in themselves, movable in the ordinary sense, we should be of the opinion that, by “movable property,” the testator intended his whole personal estate; because the exception of any article, such as a debt by simple contract, which, though personal, was not, in the popular sense, movable, would have proved that the testator intended that other articles of the like kind, and not excepted from the bequest of his “movable property,” should by pass it. But there is not even one such article in the bequest to Nancy Smith.
On the other hand, there are at least two considerations, arising from the contest, which, in some degree, fortify the construction we have given to the isolated words, “all my movable propertyFirst. Though the testator required his executors to pay all his debts, he said not a word about debts due to him; and it is rather improbable that, in such a case, he intended to bequeath to J. N. Wood every thing that would be assets, and that he would have omitted any .unequivocal allusion to a claim so large as that on the government, if he thought of it, or intended to pass it. Second. All the articles expressly excepted from the bequest to J. N. Wood, and which otherwise would undoubtedly have passed to him by that bequest, are of the strictly movable kind — as a horse and household goods; and adjudged cases, as well as reason, show that this fact alone is entitled to no slight consideration, and tends to the deduction that the articles contemplated by the bequest of movable property, and those specified in the exception therefrom, were intended to be ejusdem generis; and were all, therefore, movable in the same sense. Sutton vs. Sharp, (1 *349 Russel's Ca. in Chy. 145;) Roberts vs. Ruffin, (2 Atk. 113;) Green vs. Symonds, (1 Bro. C. C., 129, n.)
Wherefore, it is the opinion of this Court that the decree of the Chancellor be affirmed.